UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LETICIA CASTILLO and BERTHA LEMUS, § § § § Plaintiffs, § v. § § ALKIRE SUBWAY, LP. G.R.A. § ENTERPRISES, L.P., GOVIND § AGRAWAL, INC. and GOVIND § AGRAWAL, § § Defendants. § | CIVIL ACTION NO. H-08-cv-2658 |

**MEMORANDUM AND ORDER**

Before the Court is Plaintiffs' Motion for Conditional Certification and Notice to Potential Class Members. (Doc. No. 19.) After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that Plaintiffs' Motion should be granted.

**I.   BACKGROUND**

Plaintiffs are current and former employees of Subway franchises owned by Defendant Govind Agrawal. From February 2002 to July 2008, Plaintiff Leticia Castillo worked at the Subway sandwich shop located at 8363 Westheimer Avenue in Houston, Texas. (Castillo Aff. ¶ 2.) Defendant Agrawal owns the shop. (Pls. Am. Compl. ¶ 11.) When Castillo began work, her supervisor, Roberto Barbosa, told her that she would be paid $400 per week. According to Castillo, Barbosa also informed her that, as a salaried worker, she had no right to receive overtime pay. (Castillo Aff. ¶ 2.) From June 2005 to May or June 2006, Defendants regularly paid Castillo $800 every two weeks; although she regularly worked over forty hours per week, she never received overtime. (Castillo Aff. ¶ 3.)

1

For the pay period lasting from June 1, 2005 to June 14, 2005, Castillo was paid $800. Her timesheets indicate that, during the first week of that period, she worked 47.95 hours and during the second week, 49.64 hours; however, she received no overtime compensation. (Castillo Aff. ¶ 4.) In May or June 2006, Defendants changed the way they paid Castillo. For the pay period June 14, 2006 to June 27, 2006, Defendants paid Castillo $802.75 Her pay stub shows that she was paid for 90 hours of work, including 80 regular hours at a rate of $8.45 per hour and 10 overtime hours at rate of $12.675 per hour. (Castillo Aff. ¶ 6.) Castillo's timesheets indicate that she worked well over 90 hours during this period. She worked 48.50 hours the first week and 48.78 hours the second, meaning she did not receive overtime pay for 7.28 hours. (Castillo Aff. ¶ 7.)

On many occasions, Castillo complained to Nancy Maldona that she and her coworkers did not receive overtime pay. (Castillo Aff. ¶ 8.) Maldona responded that Defendant Agrawal, the owner, did not pay overtime and that all employees learned and accepted that when they started working for Subway. (*Id.*) Maldona told Castillo that if employees wanted to work more than 40 hours, they could do so, but they would get "double checks." Castillo took this to mean that the employee would get two paychecks, one check for the regular hours and the other check for the overtime hours, but that all the hours on both checks would be paid at the same rate. (*Id.*)

Plaintiff Bertha Lemus worked at the Westheimer store from May 2005 till November 2005. (Lemus Aff. ¶ 2.) She returned to the same store in mid-2006 and worked there through March 2008. In March, she was transferred to the Subway store near Hilcroft, where she continues to work. (*Id.*)   Throughout her employment at Subway, she has never been paid overtime, even though she often works in excess of forty hours per week. (Lemus Aff. ¶ 3.) She has learned from coworkers and co-plaintiffs that Agrawal does not pay overtime. (*Id.*) Instead,

2

she believes that employees receive two checks—one for 80 hours, and the other for overtime, with all the hours paid at the same rate. (Lemus Aff. ¶¶ 3-4.)

For the pay period of November 1 to November 14, 2006, Lemus received two paychecks, one for 80 hours and the other for 18.5 hours; all the hours were paid at a rate of $6 per hour. Her timesheets from the pay period show that she actually worked 50.89 hours the first week and 49.01 hours the second week, but she did not receive $9 per hour for overtime, and she did not receive pay for all of her overtime hours. (Lemus Aff. ¶¶ 5-6.) For the pay period of November 29 to December 12, 2006, she was paid for 80 hours on one check and her overtime hours on a second check, all at a rate of $6 per hour. She worked 52.61 hours the first week and 49.37 hours the second week. (Lemus Aff. ¶ 7.) For the pay period of February 21 to March 6, 2007, she was paid for 97 hours, all at a rate of $6 per hour, but her timesheets from this period show that she worked 98.05 hours. (Lemus Aff. ¶ 8.) She received no overtime for the pay period of March 21 to April 3, 2007, even though her timesheets indicate that she worked 20.60 overtime hours during this period. (Lemus Aff. ¶ 9.) After her transfer to the Hillcroft store, Defendants continued to pay Lemus the same hourly rate for both her regular and overtime hours. (Lemus Aff. ¶ 10.)

Plaintiff Lima began working at Subway in 2003. Initially, she worked at Defendants' store at 8363 Westheimer as well as Defendants' store at Richmond and Fondren. (Lima Aff. ¶ 2.) She received a pay check from each store. She worked well in excess of forty hours a week, but she received the same rate of pay for all of her hours. (Lima Aff. ¶ 3.) From 2004 to 2006, she worked exclusively at the 8363 Westheimer store. She never received overtime pay. (Lima Aff. ¶ 4.) Instead, she would receive two checks, one for her regular hours, and one for her overtime hours, both paid at the same rate. (Lima Aff. ¶ 5.)

Plaintiff Castillo filed this suit, alleging that Defendants were violating the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by failing to pay the Subway workers overtime. Plaintiffs Lemus and Lima joined the suit. (Doc. No. 9 and 11.) Plaintiffs now move for conditional certification of a collective action, pursuant to 29 U.S.C. 216(b). Defendants oppose Plaintiffs' Motion on the grounds that the putative class is vaguely defined and that Plaintiffs' Affidavits are inadmissible. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II.  ANALYSIS

### A.  Standard

Section 207(a) of the FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. 29 U.S.C. § 207(a).[1] Section 216(b) creates a cause of action for employees against employers violating the overtime compensation requirements. 29 U.S.C. § 216(b). It also creates an opt-in scheme by which plaintiffs must affirmatively notify the court of their intention to become parties to the suit. *See Mooney v. Amarco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995) (overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91 (2003)). District courts have discretion in deciding whether to order notice to potential plaintiffs. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-171 (1989); *Villatoro v. Kim Son Restaurant, LP*, 286 F.Supp.2d 807, 808 (S.D.Tex. 2003).

Most courts use the two-step approach suggested in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987) to determine whether to authorize notice to similarly situated employees advising them of their right to join the FLSA collective action. *See Maynor v. Dow Chemical Company*, No. G-07-0504, 2008 WL 2220394, at * 3-4 (S.D.Tex. May 28, 2008) (collecting

---

[1] Defendants appear to have conceded that they are covered by FLSA and that the employees do not fall under an exemption.

cases). The first step of the analysis is the "notice stage" during which the district court decides whether to issue notice to the potential plaintiffs. *Mooney*, 54 F.3d at 1213-14. The court's decision is typically based on the pleadings and the accompanying affidavits that have been submitted. *Id.* "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class that provides potential class members with notice and the opportunity to opt-in." *Maynor*, 2008 WL 2220394 at * 5 (quoting *Mooney*, 54 F.3d at 1214 n. 8) (internal quotations omitted). At a minimum, the plaintiffs must demonstrate that the putative class members "were together the victims of a single decision, policy, or plan ...." *Id.* This stage requires a showing of "some identifiable facts or legal nexus [that] binds the claims so that hearing the cases together promotes judicial efficiency." *Maynor*, 2008 WL 2220394 at * 5 (citing *Barron v. Henry County Sch. Sys.*, 242 F.Supp.2d 1096, 1103 (M.D. Ala. 2003)). "A court may deny plaintiff's right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F.Supp.2d 504, 507 (M.D.La. 2005).

If the court conditionally certifies the class, the case proceeds to the second stage of the *Lusardi* analysis. After discovery is largely complete, the defendant will move to decertify the conditionally certified class. *See Mooney*, 54 F.3d at 1214. At this point, the court must make a factual determination as to whether the plaintiffs are similarly situated. *Id.* The standard in this second stage is "less 'lenient.'" *Falcon v. Starbucks Corporation*, 580 F.Supp.2d 528, 534 (S.D.Tex. 2008) (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007)). If the district court finds that the claimants are similarly situated, the collective action may proceed. *See Mooney*, 54 F.3d at 1214. If the court decertifies the class, the opt-in plaintiffs are dismissed

with prejudice and the original plaintiffs proceed on their individual claims. *England*, 370 F.Supp.2d at 508.

### B. The Notice Stage

This case is at the first step of the *Lusardi* analysis, the notice stage. In the form of pleadings and affidavits, Plaintiffs have presented minimal evidence of being similarly situated; the decision whether to issue notice to potential class members is therefore "made using a fairly lenient standard." *Maynor*, 2008 WL 2220394 at * 6 (citing *Mooney*, 54 F.3d at 1213). At this stage, a plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. *See Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714, at *4 (S.D.Tex. Jan. 24, 2007).

Plaintiffs' affidavits allege that they regularly worked in excess of forty hours a week, and that, instead of receiving overtime, they received two checks, one for their regular hours, and one for their overtime hours. They each received the same rate of pay for both their regular and overtime hours. In some instances, Plaintiffs received no pay for all or some of their overtime hours. Plaintiffs Castillo and Lemus allege that this two-check system is a policy Defendant Agrawal uses for all his employees at the Subway restaurants. Furthermore, Plaintiffs Castillo and Lemus allege that they know of other of Defendant Agrawal's Subway employees who were deprived overtime compensation through this two-check system. (Castillo Aff. ¶ 10; Lemus Aff. ¶ 11.) Plaintiffs aver that the putative class consists of "employees who were paid less than $455 per week, and who worked over forty hours in at least one workweek." (Pl. Am. Compl. ¶ 6.) The Court finds that Plaintiffs have made the requisite showing for conditional class

certification. Together, Plaintiffs' Affidavits allege that "the putative class members were together the victims of a single decision, policy, or plan" to avoid paying overtime by giving employees two separate checks. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1108 (10th Cir. 2001).

Defendants argue that Plaintiffs' proposed class definition is too vague and might include Subway employees who were not wrongfully deprived of overtime compensation. Additionally, Defendants argue that Plaintiffs' definition could include all of Defendant Agrawal's employees, not just those that work at his Subway restaurants. The Court agrees that Plaintiffs' proposed definition creates confusion, and instead proposes that the putative class consist of "employees at Subway restaurants owned by Defendant Govind Agrawal who were paid less than $455 per week and who have claims for unpaid overtime."

### C. Plaintiffs' Affidavits

Defendant makes a number of objections to Plaintiffs' Affidavits. First, Defendants argue that portions of the Affidavits should be deemed inadmissible because they contain hearsay and "impermissible conclusions" about which Plaintiffs allegedly lack personal knowledge. Without commenting on the merit of these objections, the Court notes that there is a disagreement among district courts about whether evidence submitted during the notice stage must meet certain admissibility standards, as in the summary judgment context. *See White v. MPW Industrial Services, Inc.*, 236 F.R.D. 363, 368 (E.D.Ten. 2006) (noting the disagreement among district courts as to whether Federal Rule of Civil Procedure 56(e) should apply to the plaintiff's evidence in the notice stage). This Court finds more persuasive the cases which have held that factual support for the plaintiff's claims need not meet summary judgment type

evidentiary standards at the notice stage. The district court in *White* explained the reasoning for this relaxed standard:

> Requiring a plaintiff to present evidence in favor of conditional certification that meets the standards in Rule 56 fails to take into account that the plaintiff has not yet been afforded an opportunity, through discovery, to test fully the factual basis for his case. Second, motions for conditional certification, unlike motions for summary judgment, do not seek the final disposition of the case on the merits .... [W]hether the motion for conditional certification is granted or denied, the case proceeds with discovery.

236 F.R.D. 363 at 368. At this time, the Court will not strike the Affidavits because of Defendants' contention that they contain hearsay and conclusory statements.

Defendants also object to Plaintiffs' Affidavits on the grounds that the English language translations of the Affidavits are not submitted with an interpreter's affirmation. Plaintiff responds that the English language versions were themselves signed under the pains and penalties of perjury and meet the requirements of a sworn declaration in 28 U.S.C. § 1746.

### D. Form of Notice to Potential Plaintiffs

Defendants lodge several objections to Plaintiffs' proposed notice to potential class members. (Doc. No. 19, Ex. 4.) First, Defendants argue that potential plaintiffs should be warned that, if Defendants are successful in the case, the individual plaintiffs might be responsible for costs. Second, they argue that the notice must warn the potential plaintiffs that the court might decertify the action if it finds that the plaintiffs are not similarly situated. Third, Defendants object to the language requiring the potential plaintiff to "designate the named plaintiffs ... to make decisions on my behalf concerning the litigation ...." Finally, Defendants argue that the notice, which bears the imprimatur of the Court, must appear neutral.

In their Reply, Plaintiffs seem to concede the first two arguments regarding costs and decertification. Plaintiffs respond to the third argument by pointing out that collective actions are representative actions, making it appropriate for potential class members to "designate the

named plaintiffs ... to make decisions." As to the last objection, Plaintiffs point out that their proposed notice contains the following language: "Although the Court has authorized the Restaurant Workers to send this Notice, there is no assurance that the Court will grant any relief to them or to you in this case." Plaintiff argues that this language is sufficient to maintain the appearance of judicial neutrality. Plaintiffs also makes a number of objections to Defendants' proposed notice, arguing that Defense counsel's contact information should not be included on the notice, and that potential plaintiffs should not be encouraged to retain his or her own lawyer. (Doc. No. 25, Ex. 1.)

Collective actions are considered representative actions. *Mooney*, 54 F.3d at 1214. Thus, the language asking potential plaintiffs to authorize Plaintiffs to act on their behalf is appropriate and will inform opt-in plaintiffs about the nature of the litigation.

Plaintiffs note that the Supreme Court considered the issue of a notice's neutrality in *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 174 (1989). The notice at issue in that case contained "a statement that the notice had been authorized by the [d]istrict [c]ourt, but that the court had taken no position on the merits of the case." *Hoffman*, 493 US at 169. While Plaintiffs point to this specific language, the Supreme Court declined "to examine the terms of the notice used ..., or its concluding statement indicating the court's authorization." *Id.* The Court finds that Plaintiffs' proposed language suggests the Court's neutrality. To further clarify the matter, however, the Court requires the addition of the following language: "While the Court has authorized this notice, it takes no position on the merits of this case."

Furthermore, the Court agrees with Plaintiffs that there is no need for the notice to contain Defense counsel's contact information. *See Gambo v. Lucent Techs. Inc.*, No. 05 C 3701, 2005 WL 3542485, at *7 (N.D.Il. Dec. 22, 2005). Additionally, Defendants suggestion

9

that the notice inform potential plaintiffs that they may opt in and bring their own lawyer "would lead to confusion, inefficiency and cumbersome proceedings." *Adams v. Inter-Con Sec. Sys. Inc.*, 242 F.R.D. 530, 541 (N.D.Cal. Apr. 11, 2007).

### III. CONCLUSION

Plaintiff's Motion for Conditional Certification is **GRANTED**. The Court grants the parties ten days to submit a joint notice to potential opt-in plaintiffs.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 30th day of April, 2009.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.